IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WEST VIRGINIA LABORERS' PENSION
TRUST FUND,

                      Plaintiff,

v.                                          CIVIL ACTION NO.   2:10-cv-01120

BUFFY A. BURKHAMMER, individually, and
BUFFY A. BURKHAMMER, as Executor of the
Estate of Gerald M. Davis,

                      Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff West Virginia Laborers' Pension Trust Fund's verified motion for default judgment [ECF 19]. For the reasons that follow, the Court **GRANTS** the motion.

        *I.*        *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff West Virginia Laborers' Pension Trust Fund ("the Fund") is a non-profit organization qualifying as an Employee Benefit Plan under the Employee Retirement Income Security Act ("ERISA"). According to Plaintiff's Complaint filed in this Court on September 16, 2010, Gerald M. Davis retired and began receiving a "life annuity" benefit from Plaintiff on August 1, 2003. Under this form of benefit, Mr. Davis was to receive monthly payments during his lifetime that ceased to be payable upon his death. Beginning on or about January 7, 2008, these funds were distributed to Mr. Davis by direct deposit to a bank account he held jointly with his daughter, Defendant Buffy A. Burkhammer.

Mr. Davis died on March 22, 2009. After his death, Defendant Burkhammer had exclusive access to Mr. Davis's account. She failed to inform the Fund of her father's death, instead continuing to collect pension fund distributions that the Fund continued to pay under the misapprehension that Mr. Davis was alive. By the time Plaintiff learned of Mr. Davis's death on March 4, 2010, Defendant Burkhammer had collected $21,460.68 in mistakenly paid pension funds. Plaintiff's Complaint names Buffy A. Burkhammer as a defendant individually and as the executor of her father's estate and alleges unjust enrichment under federal common law and ERISA, breach of fiduciary duty under 29 U.S.C. § 1104(a), conversion, and fraud. Plaintiff seeks to recover the mistakenly paid pension funds plus interest, reasonable attorney's fees, and costs. It also seeks the imposition of a constructive trust over the income and assets of Defendant Burkhammer and the estate of Gerald M. Davis.

Defendant Burkhammer was personally served on August 24, 2011 as an individual and as her father's executor. She never filed an answer. On March 2, 2012, Plaintiff moved for an entry of default, which the Clerk of the Court entered against both Defendants on April 17, 2012. Plaintiff filed the pending verified motion for default judgment on October 1, 2012. This was followed by a supporting affidavit filed on May 13, 2013 in which Plaintiff states that Defendant Burkhammer is not a minor, an incompetent, nor a member of the United States armed services.

This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e).

### III.   DISCUSSION

*A.   Legal Standards*

Federal Rule of Civil Procedure 55 governs default judgments. Under that rule, "trial judges are vested with discretion, which must be liberally exercised, in entering . . . [default]

2

judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Though the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993), default judgment is available "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). A defaulting party admits all well-pleaded factual allegations in the complaint except those relating to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). A defaulting party does not admit mere conclusions of law, however, and the court must determine "whether the unchallenged facts constitute a legitimate cause of action" before awarding default judgment in the plaintiff's favor. Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688 (3d ed. 1998); *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

The trial court may conduct a hearing to determine the amount of damages pursuant to Rule 55(b)(2) or it may award damages without a hearing where the amount claimed is "capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Courts are afforded substantial discretion when determining the need for such a hearing. *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

*B.     Analysis*

Defendants were personally served with a summons and a copy of Plaintiff's Complaint on August 24, 2011, but have not filed a responsive pleading or otherwise defended this action. It is

3

apparent that Plaintiff is entitled to entry of a default judgment. As a result of the default, the Court must take the factual allegations set forth in Plaintiff's Complaint as true. It now must determine whether those uncontested facts establish a claim entitling Plaintiff to relief.

Count Two of Plaintiff's Complaint alleges breach of fiduciary duty under 29 U.S.C. § 1104(a). Section 1104 imposes a duty on fiduciaries to discharge their duties "solely in the interests of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). Under 29 U.S.C. § 1109(a), a fiduciary who breaches this duty

> shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

ERISA defines a fiduciary, in part, as one who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). Plaintiff's Complaint alleges that Defendants became fiduciaries of plan assets upon the death of Mr. Davis by exercising control and authority over the mistakenly paid pension funds. (ECF 1 at ¶ 26.)

An individual may acquire fiduciary status under ERISA either because the plan documents expressly delegate fiduciary responsibility or because the person functions as a fiduciary. *In re Polaroid ERISA Litigation*, 362 F. Supp. 2d 461, 472 (S.D.N.Y. 2005) (citing *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995)). This includes a person who wrongly retains benefit payments. *See Int'l Painters and Allied Trades Indus. Pension Fund v. Aragones*,

4

643 F. Supp. 2d 1329 (M.D. Fla. 2008). In *Aragones*, a beneficiary of the plaintiff fund passed away and, as a result of administrative error, his wife received 130 payments to which she was not entitled. The fund alerted the wife of the error, but she neither responded nor repaid the benefits. The fund brought suit, claiming that the wife was "a fiduciary of the fund to the extent that she ha[d] received benefits not due to her." *Id.* at 1333.

The court interpreted the statutory text to extend fiduciary status to anyone who exercised "any authority or control" over the disposition of plan assets. *Id.* at 1336-37 (citing 20 U.S.C. § 1002(21)(A)(i)). It found that the wife's knowing retention and complete control over plan assets exposed her to personal liability as a fiduciary. *Id.*; *see also Chao v. Day*, 436 F.3d 234, 236-37 (D.C. Cir. 2006) (finding that an insurance agent who misappropriated plan assets for himself was a fiduciary because he exercised control over the disposition of the assets); *Carpenters Pension and Annuity Plan v. Grosso*, No. 07-5013, 2009 WL 2431340 at *5-6 (E.D. Pa. Aug. 6, 2009) (extending fiduciary status to a beneficiary who retained $163,130.01 in mistakenly paid benefits).

In this case, the uncontested facts establish that Defendants exercised complete control over the mistakenly paid pension funds after Mr. Davis' death. Defendant Burkhammer was, at that time, the sole account holder over her father's bank account. She ignored the Fund's letter that explicitly informed her that she was not entitled to these benefits and requested their return. The Court concludes that Defendants are fiduciaries and may be held personally liable for the amount of pension payments they wrongfully retained. 29 U.S.C. § 1109(a). Because the Court's finding as to breach of fiduciary duty is sufficient to make Plaintiff whole, the Court will not consider Plaintiff's other claims for relief. It also finds that equitable relief, such as the constructive trust that Plaintiff requests, is inappropriate at this juncture. A constructive trust may

be appropriate where money or property belonging to a plaintiff can "clearly be traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). While the pension benefits were originally disbursed to the bank account that Mr. Davis shared jointly with Defendant Burkhammer, there is no telling what amount, if any, of the benefit payments remain in that account. Plaintiff's request for a constructive trust over all income and assets of Defendant Burkhammer and of the estate of Mr. Davis is therefore improper.

Given its review of the record, the Court has determined that a hearing to determine the amount of damages is unnecessary. Plaintiff requests $21,460.68 in mistakenly paid pension benefits, plus interest, $3,245.00 in attorney's fees, and $1,246.45 in costs. After having reviewed Plaintiff's Complaint and verified motion for default judgment, the Court concludes that the requested attorney's fees and costs are reasonable. 29 U.S.C. § 1132(g)(1).

Since ERISA does not specifically provide for pre-judgment interest in this case, an award of prejudgment interest is a question of fairness left to the discretion of the district court. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030-31 (4th Cir. 1993) (en banc); *see Devine v. Am. Ben. Corp.*, 27 F. Supp. 2d 669, 676 n.8 (S.D. W. Va. 1998). The Court finds that pre-judgment interest is needed to compensate Plaintiff for its loss of the use of these funds over the last four years. *See Brink v. DaLesio*, 667 F.2d 420, 429 (4th Cir. 1981). This leaves the issue of an appropriate interest rate. This matter is also discretionary, but "[g]enerally, 'the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest.'" *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 823 F. Supp. 2d 307, 326 (D. Md. 2011) (quoting *Blankenship v. Liberty Life Assurance Co.*, 486 F.3d

620, 628 (9th Cir. 2007)). The Court will use the rate provided by 28 U.S.C. § 1961(a) from the week ending March 27, 2009 to compute pre-judgment interest.

### III. CONCLUSION

In accordance with Federal Rule of Civil Procedure 55(b)(1), the Court **GRANTS** Plaintiff's motion [ECF 19] and **ENTERS** default judgment against Buffy A. Burkhammer, individually and as executor of the estate of Gerald M. Davis, for the sum of $26,495.50 plus post-judgment interest under 28 U.S.C. § 1961 at the legal rate of [0.13%] until the judgment is paid. This sum represents $21,460.68 for mistakenly paid pension benefits, plus pre-judgment interest from April 1, 2009 to [the date of this Order] at the rate of .59% per annum in the total amount of $543.37, plus Plaintiff's attorneys' fees and costs in the amount of $4,491.45. The Clerk of the Court is **DIRECTED** to remove this case from the Court's active docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 15, 2013

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

7